**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
      Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **JERALD PARKER**, | Case No. 3:19-cv-00265-MO |
| Plaintiff, | **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CRC HEALTH OREGON, LLC**, dba Allied Health Services East, an Oregon corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

PAGE 1 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

# INTRODUCTION

Summary judgment in this matter is inappropriate because there are clear disputes of material fact. The plaintiff, Jerald Parker, was a security guard for defendant's methadone clinic before he was terminated four days after he was released to full duty from a workers' compensation claim and one day after he informed his supervisor that he was filing a complaint with the Bureau of Labor and Industries (BOLI). In fact, within hours of declaring that he would file a BOLI complaint for not being returned to his prior position, defendant was in a frenzy to obtain evidence that it could use to justify terminating plaintiff's employment. After ten months of employment in which he received no discipline, Mr. Parker was injured when an ambulance ran into him while he was on duty at the Clinic. Mr. Parker reported his on-the-job injury and filed a workers' compensation claim. Mr. Parker was placed on light duty and then taken off work entirely. While he was off work, defendant hired another security guard.

When Mr. Parker returned to full duty on March 16, 2018, he was placed in a less desirable position (patrolling out in the cul-de-sac outside the clinic rather than by the entrance). On March 19, 2018, Mr. Parker complained to his direct supervisor, Tyra Gates, about this change in position, demanded to see his job description, and indicated that he was filing a complaint with BOLI. As a result of these complaints (which defendant describes as an "outburst") he was suspended and removed from his position. In the ensuing 24 hours, upper management instructed Ms. Gates to compile complaints that had been raised prior to Mr. Parker's workers' compensation claim, and contact patients and staff about other complaints that had been raised months earlier. This was done with the self-evident intent of procuring evidence that could be used to defend their decision to terminate his employment. After management had

PAGE 2 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

obtained, in their own words, "enough to proceed with termination," they terminated his employment based upon the fact that Mr. Parker had allegedly exchanged a number of text messages with a patient. By her own admission, the clinic manager, Ms. Reichle, and Ms. Gates knew of these complaints prior to Mr. Parker's being released to full duty and notifying defendant that he was filing a BOLI charge to report violations of Oregon's injured worker statutes

Here, there is close temporal proximity between the adverse employment action (Mr. Parker's termination) and the protected activity (filing a workers' compensation claim, being released to full duty, and stating that he was going to file a complaint with BOLI). Also, there questions of fact concerning defendant's proffered reasons for termination: if defendant believed that the complaints it proffers as the basis for termination merited Mr. Parker's termination, why wasn't he terminated months prior when defendant knew about the complaints instead of after Mr. Parker engaged in protected activity? A reasonable jury could and should find that defendant did not and do not believe the complaints against Mr. Parker merited his termination. Instead the complaints were a convenient pretext for getting rid of an employee that had engaged in protected activity. As such summary judgment is inappropriate and this matter should be tried to a jury.

## STATEMENT OF FACTS

Defendant CRC Health Oregon, LLC, dba Allied Health Services East ("Allied" or "Defendant") operates Portland Comprehensive Treatment Centers, including the clinic at which Plaintiff was employed. ECF 5, ¶1. These clinics provide addiction services, including dispensing methadone. *Id.* Mr. Parker is a former employee of Allied. *Id.* at ¶ 2.

PAGE 3 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

Mr. Parker was hired on May 30, 2017, by Allied to work as a Security Officer at the Allied East Clinic by the airport in Portland, Oregon. *Id.* at ¶ 3; Parker Decl. ¶ 3. The Allied East clinic ("the Clinic") provided methadone services to approximately 600 patients a day. *Id.* His job duties were patrolling the parking lot, inside the lobby, making sure the clients were not smoking in or around the parking lot, making sure medical transportation parked in the correct parking area, making sure clients were not eating, drinking or using their phones in the lobby, making sure there were no fights, checking that clients were not loitering, and helping the staff as needed. Parker Decl. ¶ 4. Plaintiff's position was difficult as he was constantly interacting with patients apparently suffering from mental health and drug additional problems. His job involved routinely keeping unruly patients in line and preventing patients from smoking and taking or dealing drugs on the premises. Parker Decl. ¶ 5. Mr. Parker was frequently called unpleasant names, threatened and harassed. Parker Decl. ¶ 6. On several occasions Mr. Parker was called a "nigger" by patients (Mr. Parker is black). *Id.* On more than one occasion patients declared openly that they would fabricate stories of assault or sexual harassment to get him fired because of his enforcement activities. Parker Decl. ¶ 7. Mr. Parker reported this to his direct supervisor, Tyra Gates. *Id.*

When Mr. Parker was hired, Erin McCabe was the Clinic Director's. A few months later, Debbie Peterson took over as the Clinic's director. ECF 5, ¶ 4. In September 2017, Mr. Parker received a performance review by Peterson, and it rated his performance as "very good." *Id.*; Parker Decl. ¶ 8 Ms. Peterson told Mr. Parker that he was good with the clients, that the clients respected and listened to him and that the other businesses around the Clinic were very pleased with his work. Parker Decl. ¶ 8.

PAGE 4 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

As a result of Mr. Parker enforcing the Clinic's rules, e.g. preventing patients from dealing drugs on premises or smoking in prohibited areas, Mr. Parker incurred the ire of some of the patients. Parker Decl. ¶ 9. These patients filed complaints against Mr. Parker. *Id.* These complaints go back to September 5, 2017 and continued up to January 3, 2018. Burgess Decl. Ex. A. Of the seven complaints, five of them do not concern any sexual harassment or misconduct. Burgess Decl. Ex. A. One of these complaints concerns one patient who admits to calling Mr. Parker a "nigger" and a "bitch." Burgess Decl. Ex. A p. 11. Two complaints from September do allege sexually harassing conduct but Mr. Parker flatly and consistently denied that these allegations were true and defendant did not discipline plaintiff at the time. Parker Decl. ¶ 10.

On December 11, 2017, while at work and performing his job duties for Allied, Mr. Parker was injured when a car backed over a curb and struck him on the right side, causing pain to his right shoulder up to his neck area. ECF 5, ¶ 6; Parker Decl. ¶ 11. Mr. Parker immediately reported the incident to his supervisor, Peterson, and filled out an Employee's Report of Injury form and a Workers' Compensation Claim form. *Id.*

From January 2, 2018, through February 7, 2018, Parker was released to modified duty. Parker performed light-duty tasks, such as walking around the parking lot, wherever the clients were standing. ECF 5, ¶ 7.

In mid-January 2018 Ashleigh Reichle took over as the Clinic's director when Ms. Peterson left. Burgess Decl. Ex. B p. 2.

In March 2018, Mr. Parker was released by his doctor to work for a week to see if he could handle the work. Parker Decl. ¶ 12. Between March 3 and March 8, 2018, Everett Marriott was hired as a security guard and given Parker's position. *Id.*

PAGE 5 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

On March 16, 2018, Mr. Parker was released to full duty. ECF 28-1, p. 23. Upon his return to full duty, Mr. Parker was required to work outside in the cul-de-sac and the parking lot picking up trash and directing traffic. *Id.* These were not jobs that he had performed prior to his injury, they were not tasks assigned to his position in his work description, and they were less desirable than the job he previously held. *Id.*

Defendant has repeatedly claimed that it did not hire Mr. Marriott to replace Mr. Parker but instead states that it was simply hiring a second security guard as it had previously intended to do. This is untrue. As defendant testified,

> Q. Why was a second security guard hired?
>
> A. I believe that Mr. Parker's doctor had put him on a more restricted day.
>
> Q. I see. And so he wasn't able to perform all of the functions of his position; is that correct?
>
> A. At that time, that is correct.
>
> Q. All right. After Mr. Parker was terminated, did you hire a replacement security guard?
>
> A. No, we did not.
>
> Q. How many security guards work at the location that Mr. Parker worked at?
>
> A. Currently there is one.

Burgess Decl. Ex. C.

On March 20, 2018, Parker came in to work and began working the dosing line while the Mr. Marriott worked in the parking lot. Parker Decl. ¶ 13. Ms. Gates, the Officer Manager, told Mr. Parker that he needed to go work in the cul-de-sac. *Id.* Mr. Parker stated that it was not in his

PAGE 6 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

job description to work in the street picking up trash. *Id.* Ms. Gates said that the job description stated that Parker needed to work in the cul-de-sac. *Id.* Parker reviewed his job description and it did not state anything about him working in the cul-de-sac. *Id*. Ms. Gates started yelling at Parker in front of the clients and told him if he did not go to the cul-de-sac, he would be sent home. *Id.* Mr. Parker was not yelling or cursing at Ms. Gates. *Id.* Mr. Parker went to the back to talk to Steve DeNuncio (who is higher up than Gates). *Id.* Mr. DeNuncio asked Mr. Parker why he was arguing with Ms. Gates. *Id.* Mr. Parker explained to Mr. DeNuncio that he was not arguing with Ms. Gates, but that Ms. Gates was yelling at him. *Id.* Mr. DeNuncio told Mr. Parker to go home until further notice. *Id.* This occurred shortly after 6:00 am. Parker Decl., ¶ 14.

Within hours, Ms. Reichle and Mr. Antonetti swiftly moved and asked Ms. Gates to collect complaints about Mr. Parker; complaints Ms. Reichle was already aware of. Burgess Decl. Ex. A p. 28. Then they contacted Mr. DeNunzio who in turn obtained information from one of his patients who allegedly exchanged text messages with Mr. Parker. Burgess Decl. Ex. A pp. 14-19.

On Wednesday, March 21, 2018, Ms. Reichle called and told Mr. Parker that he was suspended until she talked to HR to find out what they wanted to do with Mr. Parker. ECF 5, ¶ 13. Parker told Reichle that he had contacted BOLI. *Id.*

On March 21, 2018, Ms. Reichle received an email which purports to show the text records of the patient. Burgess Decl. Ex. A pp. 14-19. The records which are typed out in Calibri font appear to be a table from an Excel spreadsheet and contain 35 references to Mr. Parker's telephone number, as well as some to "my honey" and others. Burgess Decl. Ex. A pp. 14-19. There is no indication whether the entries are sent or received messages and the messages are clearly not records provided by a telephone company. Indeed, they could be entries showing that

PAGE 7 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

the alleged patient sent messages to Mr. Parker or even fabricated by someone. After exchanging these messages Mr. Antonetti informs Ms. Reichle that they have "enough" to terminate Mr. Parker's employment. Burgess Decl. Ex. A pp. 22-24. Mr. Antonetti states that the reasons for termination are Mr. Parker's "outburst" on March 19, 2016, in which he complained of defendant's failure to return him to his pre-injury position and that "We continue to receive complaints from patients about inappropriateness[.]" *Id*. The problem with these reasons are twofold: (1) defendant was aware of all complaints against Mr. Parker before March 19, 2018, and neither Ms. Reichle nor Mr. Antonetti took any steps to investigate or discipline Mr. Parker; and (2) plaintiff did not act inappropriately, he complained to his supervisor about defendant's failure to return him to his position and said he was filing a BOLI complaint.

On Thursday, March 22, 2018, Reichle called Parker and said that Defendant had decided to terminate his employment. This was the only time Parker was disciplined. Parker asked Reichle the reason he was being terminated. Ms. Reichle told Mr. Parker that it was because he had said some inappropriate things to some clients. Parker asked who he said something inappropriate to and what he had allegedly said. Reichle told Parker that she could not tell him.

Parker asked Reichle to see his employee file. Reichle told Parker that he could only see the papers he had signed when he was hired and nothing else. Parker never received a copy of the company's personnel records concerning him.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing the

PAGE 8 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987); *Hector v. Wiens*, 533 F2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F2d 136, 140 (9th Cir. 1981). Furthermore, very little evidence is needed "to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994).

"In resolving summary judgment motions, the Court may neither make credibility determinations nor weigh the evidence." *Stanley v. Cnty. of San Diego*, No. 16cv1227-MMA (AGS), 2018 U.S. Dist. LEXIS 10936, at *17 (S.D. Cal. Jan. 23, 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

PAGE 9 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

# EVIDENTIARY OBJECTIONS

Defendant cites to several documents that are hearsay and for which there is no authentication.

ECF 29-1, pages 1-2 is two pages of handwritten notes with no date and no signature. There is no way of knowing who wrote those documents or when. There is no declaration authenticating them and they are clearly hearsay.

ECF 29-2 is an unsigned letter with no date and no signature. There is no declaration authenticating it and it is clearly hearsay.

These documents should be stricken since they are without foundation, are hearsay and are not authenticated.

# ARGUMENT

## A. Injured Worker Claims

ORS 659A.040 makes it an unlawful employment practice for an employer "to discriminate against a worker with respect...to any term or condition of employment because the worker has applied for benefits or invoked or utilized [the workers compensation system]." In order to prove a *prima facie* case for retaliatory discrimination, Plaintiff must show (1) that he invoked the worker's compensation system, (2) he was discriminated or retaliated against in the tenure, terms or conditions of employment, and (3) the adverse action was because he invoked the workers' compensation system. *Hardie v. Legacy Health System*, 167 Or. App. 425, 433, 6 P.2d 531 (2000).

In the Ninth Circuit, very little evidence is needed to establish a *prima facie* case at the summary judgment stage. *Wallis, supra* at 889. To show causation, an employee must show that a substantial factor in the alleged discrimination was the invocation of the workers' compensation system. *Hardie, supra* at 435-36. A "substantial factor" is one that makes a difference in the decision. *Id.* The crux of this standard is whether, in the absence of the

PAGE 10 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

discriminatory motive (i.e. the invocation of the workers' compensation system), the employee would have been treated differently *Id. at* 435.

Causation may be established based on the timing of the relevant actions alone. *Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 439, 507 (9th Cir. 2000). "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir. 2002). In this circuit (and district), numerous courts have concluded that "[c]lose temporal proximity between protected leave and a decision to eliminate a position may alone be enough to ward off summary judgment." *Peterson v. Tri-County Metro. Transp. Dist.*, No. CV-06-1828-ST, 2008 U.S. Dist. LEXIS 20881, at *36 (D. Or. Mar. 14, 2008) (citing *Reid v. Smithkline Beecham Corp.*, 366 F. Supp. 2d. 989, 998 (S.D. Cal. 2005); *see also Florea v. Nw. Country Place, Inc.*, No. 3:13-cv-02290-SB, 2015 U.S. Dist. LEXIS 89169, at *25 (D. Or. June 15, 2015); *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) ('We also find that Ray has established a causal link between his protected activity and the employment actions by demonstrating that each action was implemented close on the heels of his complaints. That an employer's actions were caused by an employee's engagement in protected activities may be inferred from "proximity in time between the protected action and the allegedly retaliatory employment decision."')(quoting *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987)); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004), *cert. denied*, *Multnomah County v. Alpha Energy Savers, Inc.*, 544 U.S. 975 (2005) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003)) (a three-month period between a protected activity and retaliatory action "easily" supports an inference of retaliation); *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 870-71 (9th Cir. 1996) (evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the employer); *see also Brungart v. Bellsouth Telecomm., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000); *Montell v.*

PAGE 11 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

*Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) (holding that close proximity can be sufficient to withstand summary judgment); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (same). Other circuits have held the same. *See Brown v. Scriptpro*, LLC, 700 F.3d 1222 (10th Cir. 2012) (employee fired two-days after requesting medical leave); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (observing that one and one-half months between the protected activity and dismissal "may, by itself, establish causation") (citing *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994)); and *King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999);

In violation of ORS 659A.043, Mr. Parker was never returned to his position after he was released to full duty. Instead, he was terminated within four days of being released to full duty. The security guard that replaced him at the Clinic was kept on and no second security guard was ever obtained. It was only after Mr. Parker was released to full duty and complained of his less favorable position that the prior complaints against him were dredged back up and relied upon to justify terminating his employment. There is no evidence that Ms. Reichle had any intention to do anything with the complaints until after Mr. Parker was released to full duty and complained that he was not being given his job back. It makes sense that defendant believed Mr. Parker and not the individuals that filed complaints against him given that patients had openly threatened to fabricate allegations of harassment or assault in order to get Mr. Parker fired.

In its motion for summary judgment, Defendant does not cite to a single email, note, letter, or other document showing that defendant ever intended to reinvestigate the complaints against Mr. Parker or re-discipline him for the conduct alleged in those complaints. By Ms. Reichle's own admission she regarded them as having been investigated by her predecessor and never followed up on them. Burgess Decl. Ex. B p. 4. If she had in fact believed that Mr. Parker had been sexually harassing and groping female patients, she presumably would have either terminated Mr. Parker's employment or conducted some form of investigation. She clearly did

PAGE 12 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

not believe that to be the case because she did neither of these things until the morning of, and after, Mr. Parker complained of being treated differently and stating that he was going to file a BOLI complaint. The fact that the conduct that defendant proffers as the reason it terminated Mr. Parker's employment occurred months prior to his protected activity raises a question of fact whether those proffered reasons are the real reasons.

Defendant's arguments do not stand up to scrutiny. First, there is no evidence that Ms. Reichle was aware of any new complaints against Mr. Parker prior to her setting out to find evidence to justify terminating Mr. Parker's employment on March 20, 2019. Clearly, it was only after Mr. Parker told Ms. Gates he was filing a BOLI complaint that Ms. Reichle and Mr. Antonetti decided to seek out a justification for terminating his employment.

Ms. Gates allegations are worth considering here. In her deposition Ms. Gates claims that she was present in Mr. DeNuncio's office when a patient showed them her cell phone on which were sexually explicit messages sent by Mr. Parker. Burgess Decl. Ex. E. Mr. Parker denies that any such messages exist and the evidence supports a conclusion that this is fabricated to justify the termination of Parker's employment. It beggars belief that a clinic and office supervisor would have seen sexually explicit text messages between Mr. Parker and a patient and that they would not have disciplined Mr. Parker or at least conducted an investigation at the time. Ms. Gates claims this incident occurred "way before" Mr. Parker's termination. *Id.* Regardless, Ms. Reichle's position is that she learned of the exchange of text messages in February but the reason Mr. Parker was not terminated was because she did not have proof that Mr. Parker had in fact sent messages. She would have the court believe that it is purely a coincidence that the day after she and Mr. Antonetti are seeking to have all of the complaints against Mr. Parker "compiled" that they just happen to receive records showing that Mr. Parker had texted a patient.

What is much more plausible is that Mr. Reichle and Mr. DeNuncio were aware that Mr. Parker had exchanged some text messages with a patient but did not discipline or terminate his

PAGE 13 – RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

employment at the time because they did not regard it as a violation of policy without any evidence that they communications were inappropriate. Then, when Mr. Parker threatened to file a BOLI complaint, they ask Ms. Gates to compile any complaints against Mr. Parker. Knowing that Mr. Parker had exchanged texts with a patient, Ms. Gates, Ms. Reichle and Mr. DeNuncio then contacted that patient and obtained the records in order to justify terminating Mr. Parker's employment. This version fits both Mr. Antonetti's request that Ms. Gates compile all of the complaints against Mr. Parker and her absurd story about having seen sexually explicit text messages from Mr. Parker on a patient's phone.

A reasonable juror could easily conclude that the story of the sexual text messages and Ms. Reichle coincidentally receiving the records on the day they are debating terminating Mr. Parker's employment are unbelievable.

Defendant argues in spite of ample case law that a causal connection cannot be supplied by a close proximity in time between an adverse employment action and protected activity. As noted above, numerous cases hold that an adverse action following closely on the heels of protected activity can establish a causal connection. Defendant attempts to present the facts as though the protected activity is the original workers' compensation claim in December 2018 and suggests that "months-long lapses between a workers' compensation filing and termination is insufficient as a matter of law to allow causation to be inferred from timing alone." ECF 27, p. 16 (citing *Alvarez v. Ecolab Inc.*, No. 6:13-cv-01718-MC, 2014 WL 6684910, at *5 (D. Or. Nov. 25, 2014). Of course, this statement is untrue. *See, e.g., Coszalter*, 320 F.3d at 977-78 (a three-month period between a protected activity and retaliatory action "easily" supports an inference of retaliation). Also, there weren't "months-long lapses" as defendant suggests; Mr. Parker was released to full duty on March 16, 2018; on March 19, 2018, Mr. Parker reported a violation of ORS 659A.043 because he had not been returned to the position he had prior to his injury and that he was going to file a BOLI complaint; defendant immediately sought to procure evidence to

PAGE 14 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

justify Mr. Parker's termination; and then defendant terminated Mr. Parker on March 21, 2018. This is a quintessential close-proximity-in-time case.

Defendant states that it terminated Mr. Parker's employment for his "multiple violations of the Clinic's workplace policies[.]" ECF 27, p. 26. But defendant was aware of all of the allegations against Mr. Parker long before the decision to terminate his employment or engagement in protected activity. Ms. Reichle found a folder of complaints against Mr. Parker when she took over in January 2018 and Mr. Antonetti states that he spoke with Mr. Parker about those complaints in 2017. Burgess Decl. Ex. C p. 4; Burgess Decl. Ex. B p. 3. And the text messages that Mr. Parker allegedly exchanged with a patient do not violate defendant's policies. Although Ms. Reichle claims that simply sending text messages to a patient violates defendant's employee handbook, the actual provision does not support this contention. The relevant passage cited to by Ms. Reichle reads as follows:

> Boundaries (Staff and Patient Relationships)
>
> Acadia maintains a zero tolerance policy in regard to inappropriate relationships between our employees and our patients. Undue familiarity is a term used to describe inappropriate, non-professional, social and/or sexual relationships between a staff member and a patient.

Burgess Decl. Ex. D. But nothing in this passage makes it improper to send or receive a text message from a patient. Also, the records received from the patient—to the extent they can be called records—do not show that Mr. Parker did anything inappropriate or was unduly "familiar" with the patient. Ms. Reichle admits she never saw the contents of any text messages and that it did not matter what the content was. Burgess Decl. Ex. B p. 3. But it is clearly a question of fact whether this policy makes is a violation to exchange any text messages with any patients for any reason.

PAGE 15 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

B.  **Reinstatement**

Oregon law requires that employers reinstate employees to their former positions after they return from leave for an on-the-job injury. OAR 839-006-0130 provides as follows:

**Injured Workers: Reinstatement Under ORS 659A.043**

(1) An employer with 21 or more employees at the time of a worker's on-the-job injury or at the time an injured worker demands reinstatement to the former position must reinstate the worker to the worker's former position if:

(a) The injured worker's former position still exists (has not been eliminated for bona fide reasons). The former position "exists" even though the position may have been renamed or reclassified;

(b) The injured worker's former position is available. A worker's former position is "available" even if that position has been filled by a replacement worker while the injured worker was absent and regardless of the employer's possible preference for the replacement worker;

(c) The injured worker is not disabled from performing the duties of the former position; and

(d) Timely demand is made as provided in OAR 839-006-0130(5)(d).

Defendant only moves as to (c), arguing that "Plaintiff attempts to rely upon the time period that he was on medical leave and admittedly unable to perform the essential functions of his job to support his claim, which fails as a matter of law." ECF 27, p. 23. But this is false. Plaintiff's reinstatement claim is predicated on the fact that he was not returned to his prior position but was given an inferior and less desirable position upon his return. Defendant agrees that plaintiff was released to full duty on March 16, 2018. On that date he was required to be given his prior position. Prior to his injury, Mr. Parker worked in the front and occasionally walked through the

PAGE 16 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

parking lot or cul-de-sac. After he was returned, he was stationed in the cul-de-sac. This exposed him to the elements and is a less desirable position. Since his position was not the same and the position still existed (and was being performed by Mr. Marriott) he was not reinstated.

**C.     Reemployment**

Plaintiff agrees to dismiss his reemployment claim.

**D.     After-acquired evidence**

Defendant argues that plaintiff's damages should be cut off because it discovered evidence for which it would have terminated Mr. Parker's employment. For this, defendant relies on the fact that Mr. Parker disclosed the names of patients at the clinic as fact witnesses in the BOLI process as well as in discovery responses in this matter. These arguments are not well taken. Plaintiff is required to provide complete and accurate statements to BOLI and in his discovery responses. He is required by local rule to provide the names of all fact witnesses in this matter. His compliance with the law and rules of this court are not "after-acquired evidence."

## CONCLUSION

The County's motion for summary judgment should be denied except with respect to plaintiff's reemployment claim.

Dated: December 2, 2019.

**Law Offices of Daniel Snyder**

_s/ John David Burgess_
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 17 – **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Law Offices of Daniel Snyder
Attorneys at Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249